IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD JACKSON,                    )
                                    )
            Plaintiff,              )   Case No. CV05-260-HU
                                    )
      vs.                           )      FINDINGS AND
                                    )      RECOMMENDATION
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
            Defendant.              )
_____)

Tim Wilborn
Wilborn & Associates, Inc.
2020-C S.W. Eighth Avenue, PMB # 294
West Linn, Oregon 97068
      Attorney for plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600

Portland, Oregon 97204

Carol A. Hoch
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
        Attorneys for defendant


HUBEL, Magistrate Judge:

    This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of a claim for disability benefits under Title II and Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. The Commissioner moves to remand the action for further administrative proceedings. The claimant, Richard Jackson, asserts that the action should be remanded for the payment of benefits.

### Procedural Background

    Mr. Jackson filed applications for disability insurance benefits and SSI benefits more than eight years ago, on March 16, 1998, alleging disability since February 15, 1998, from hepatitis C, depression and back pain. The applications were denied initially and on reconsideration. On August 24, 1999, Mr. Jackson received a hearing before Administrative Law Judge (ALJ) John F. Bauer. ALJ Bauer issued a decision on October 18, 1999, finding Mr. Jackson not disabled within the meaning of the Act. Mr.

2   - FINDINGS AND RECOMMENDATION

Jackson requested review by the Appeals Council. The Appeals Council granted the request for review and remanded the case for another administrative hearing.

The second administrative hearing was held almost four years after the first, on June 10, 2002, before ALJ Jean Kingrey. Mr. Jackson appeared and testified, as did a medical expert, Susan Dragovich, a psychologist, and a vocational expert (VE), Eileen Linicome. On August 30, 2002, ALJ Kingrey issued a decision finding Mr. Jackson not disabled. Mr. Jackson requested review by the Appeals Council on November 4, 2002. Two years later, on December 10, 2004, the Appeals Council denied Mr. Jackson's request for review, making ALJ Kingrey's decision the final decision of the Commissioner.

The Commissioner now concedes that ALJ Kingrey made a number of legal errors in her decision, and that the decision is not supported by substantial evidence in the record. The Commissioner acknowledges that the ALJ:

1. Failed to use the technique for evaluating mental impairments provided in the regulations, 20 C.F.R. §§ 404.1520a, 416.920a, which involves assessing the degree of functional limitation in four areas before assessing the severity of a claimant's mental impairments.

2. Failed to give any reasons for rejecting the opinions

of William Trueblood, Ph.D., including his opinion
that Mr. Jackson had a marked limitation in his
ability to respond appropriately to "work pressures in
a usual work setting."

3.    Failed to develop the record by contacting Geronimo
Sahagun, M.D., Mr Jackson's treating doctor, in order
to resolve the ALJ's questions about why portions of
the report were typed and others handwritten,
apparently by someone other than Dr. Sahagun. Instead
of resolving the ambiguity, the ALJ ignored the hand-
written portions of Dr. Sahagun's report.

4.    Failed to consider Dr. Sahagun's opinion that Mr.
Jackson was "extremely tired and fatigued related to
hepatitis C" in her assessment of Mr. Jackson's
residual functional capacity (RFC) and in rejecting
Mr. Jackson's testimony about fatigue.

5.    Failed to consider the opinion of David Telford, M.D.,
Mr. Jackson's treating psychiatrist, that Mr. Jackson
was disabled because of impairments other than drug or
alcohol addiction. The ALJ rejected the form Dr.
Telford used because it had no space for moderate
restrictions, going from mild to marked and extreme.
But the Commissioner conceded that the ALJ had a duty
to develop the record by contacting Dr. Telford for

clarification.

6.  Failed to address the opinion of Laura Fall, M.D., in a progress note dated March 20, 1998, recommending that Mr. Jackson "get disability at least for now until we can adequately treat his hepatitis C." Tr. 125. Mr. Jackson asserts that, because his hepatitis C is still active, it has never been adequately treated, so that he remains disabled.

7.  Failed to address the lay opinion of Sherry Morton, Mr. Jackson's live-in girlfriend.

### Factual Background

Plaintiff was 39 years old on the date of the second adverse decision. He has a ninth grade education and past work experience as a laborer, carpenter, facilities maintenance technician, and general contractor.

### Standards

The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. Holohan v. Massinari, 246 F.3d 1195, 1210 (9th Cir. 2001). The rule recognizes "the importance of expediting disability claims." Holohan, 246 F.3d at 1210. In cases in which

it is evident from the record that benefits should be awarded, remanding for further proceedings would needlessly delay effectuating the primary purpose of the Social Security Act--i.e., to give financial assistance to disabled persons because they cannot sustain themselves. Id.

Improperly rejected evidence should be credited and an immediate award of benefits be made when: 1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, 2) there are no outstanding issues that must be resolved before a determination of disability can be made, and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)

If the Smolen test is satisfied, then remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the doctor's opinion. Harman, 211 F.3d at 1173 (emphasis in original). See also Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004)(applying the Smolen factors and characterizing Commissioner's request for remand as a "heads we win; tails, let's play again").

The court will apply the Smolen factors to the medical evidence which the Commissioner concedes was erroneously rejected, to determine whether remand should be for further administrative proceedings, or for an award of benefits. I do not

find it necessary to consider the ALJ's errors in rejecting Mr. Jackson's testimony and Ms. Morton's testimony, because the medical evidence rejected by the ALJ, standing alone, establishes disability if credited.

**Discussion**

**1.  Dr. Trueblood's Opinions**

Dr. Trueblood, a psychologist, performed a neuropsychological screening on January 15, 2002. Dr. Trueblood reviewed some of Mr. Jackson's past medical records, interviewed him, performed a mental status examination, and administered psychological tests. Tr. 264. Mr. Jackson's current complaints were fatigue, difficulty concentrating, clumsiness and pain. Id. Mr. Jackson thought the fatigue was due to the hepatitis C, reporting that he first became ill with it about four years previously. Tr. 265. Mr. Jackson told Dr. Trueblood he was required to be clean and sober for a year before specific treatment for hepatitis C could be implemented, but once he had been clean and sober for a year, it was determined that he was not a good candidate for interferon because of his Major Depression. Id.

Mr. Jackson described a number of subjective psychological symptoms to Dr. Trueblood. He strongly endorsed problems with his memory over the past three years. Id. He also considered himself to have been very depressed for the past three years, which he

7   - FINDINGS AND RECOMMENDATION

described as feeling hopeless and helpless and "that nothing works right." Id. Mr. Jackson reported that in the past, he had done work hard enough that he would not think much about things, which helped him cope with depression. Tr. 266. He reported difficulty falling asleep and staying asleep, but said he falls asleep during the day if he sits for too long. Mr. Jackson said he experienced pleasure when spending time with his two year old child, but at no other times. Id.

Mr. Jackson described getting "up tight" sometimes, feeling very irritable and having no patience. Id. He said when he is under pressure he feels as if he is going to blow up, as if his blood feeling is increasing and having a tight feeling in his chest. Id. Mr. Jackson reported these feelings when he is frustrated or when he is anticipating something, such as an appointment. Id. Mr. Jackson said the Serazone he is taking helped with the anxiety. Id.

Mr. Jackson currently had no close friends and generally throughout his adult years had not had any close friends. Tr. 367. He characterized himself as "kind of a loner," and endorsed feeling nervous in social group situations. Id.

Motivation and effort on the formal testing were rated as good. Tr. 268. Persistence on difficult tasks was good and Mr. Jackson was not impulsive in approaching the testing items. Tr. 259. Unusual fatigue was not observed, but he did appear somewhat

8    - FINDINGS AND RECOMMENDATION

tired near the latter part of the testing. Id.

Testing results were considered to be valid. Mr. Jackson obtained a Ful Scale IQ of 99, in the average range. Tr. 259. His score was thought to be compatible with his academic and work histories. However, the pattern of subtest scores was suggestive of the presence of neuropsychological impairment that might be due to a decline. Id. His two lowest subtest scores occurred on the subtests that are the most sensitive to the presence of neuropsychological impairment: Digit Symbol and Arithmetic. Id. However, Mr. Jackson scored above average on several nonverbal problem solving and reasoning tasks. Id. Assessment of learning and memory skills via the Wechsler Memory Scale, Third Edition (WMS-III) was overall in the low averge range. Learning and memory scores were somewhat below what would be predicted by mr. Jackson's current intellectual level; the obtained General Memory Index was significantly below the predicted General Memory Index. Id. Dr. Trueblood thought this was evidence of the presence of acquired impairment in learning and memory skills. Id. Mr. Jackson's performance on Part A of the Trail Making Test was rated as moderately impaired.

Dr. Trueblood concluded that Mr. Jackson's evaluation reflected a long-term history of depression which had increased in intensity over the past four years, "essentially since the diagnosis of hepatitis C." Id. Dr. Trueblood thought his current

status "just meets the criteria for diagnosing a Major Depressive Episode." Id. Characteristics of avoidant personality appeared to be present. Id. Dr. Trueblood thought there was mild to moderate degree of acquired neuropsychological impairment, based on the subtest pattern of the WAIS-III, memory performance, and moderately impaired performance on the Trail Making Test part B. Tr. 271. Dr. Trueblood thought depression and hepatitis C might both have contributed to the acquired neuropsychological impairment.[1] Id. Dr. Trueblood did not believe Mr. Jackson had malingered on the evaluation, and his test results did not include characteristics suggestive of malingering. Id. Dr. Trueblood's diagnoses were Major Depression, mild, recurrent; Anxiety Disorder NOS; Alcohol Abuse in full remission by report; Methamphetamine abuse in full remission by report; Cognitive Disorder NOS, rule out mild Organic Mental Disorder NOS; and avoidant personality characteristics, rule out Avoidant Personality Disorder. Id.

Dr. Trueblood completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) dated January 15, 2002. Tr. 374-75. In Dr. Trueblood's opinion, Mr. Jackson had a

---

[1] Dr. Trueblood did not explain the basis for his conclusion that a physical condition of the liver, hepatitis C, could contribute to a neuropsychological impairment.

marked impairment[2] in his ability to understand, remember and carry out detailed instructions. Tr. 374. Dr. Trueblood also assessed a marked impairment in the ability to respond appropriately to work pressures in a usual work setting.[3] Tr. 375. Dr. Trueblood found Mr. Jackson moderately impaired in his ability to interact appropriately with the public, supervisors, and co-workers. Id.

The ALJ summarized Dr. Trueblood's findings in her decision, tr. 26-27, but gave no reason for rejecting them, particularly the finding that Mr. Jackson would have marked difficulty responding to work pressures. There is no indication in the record that this finding was contradicted by any other examining psychologist; in fact, Dr. Trueblood's findings are consistent with Dr. Telford's findings in 1999 and 2000, which are discussed below.[4]

The Commissioner is required to provide "clear and

_____

[2] The face of the form states that a "marked" impairment means there is serious limitation, such that the ability to function is severely limited but not precluded. Tr. 274.

[3] David Telford, M.D., Mr. Jackson's treating psychiatrist, expressed an identical opinion in August 1999. Tr. 201.

[4] The psychologist who testified at the hearing as a medical expert, Susan Dragovich, testified that there was "actually quite a bit of agreement among numerous evaluations and treating records" about Mr. Jackson's mental impairments, which Dr. Dragovich enumerated at the hearing as major depressive disorder, anxiety disorder, and an acquired organic mental disorder "that has to do with a cognitive disorder ... learning problems that are affecting memory." Tr. 499.

11  - FINDINGS AND RECOMMENDATION

convincing" reasons for rejecting the uncontradicted opinion of
an examining physician or psychologist, Lester v. Chater, 81 F.3d
821, 830 (9th Cir. 1995), and specific and legitimate reasons
supported by substantial evidence in the record for rejecting an
opinion contradicted by another practitioner. Andrews v. Shalala,
53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner acknowledges
that the ALJ provided no reasons at all for rejecting Dr.
Trueblood's opinions.

Mr. Jackson argues that the ALJ's rejection of Dr.
Trueblood's opinions without providing any reasons for doing so,
particularly her rejection of his opinion that Mr. Jackson was
markedly impaired in the ability to respond appropriately to work
pressures, mandates a remand for payment of benefits because the
ability to respond to normal work pressures is a critical
requirement of work. Consequently, one who cannot handle work
pressures cannot sustain work, and is disabled. I agree. The
three Smolen factors are satisfied with respect to this evidence.

### 2.   Dr. Sahagun's Opinions

Dr. Sahagun, a treating physician, signed a Medical Source
Statement - Physical covering the period from June 2, 1998 to
December 1999. Tr. 296-97. Some of the responses to the
questionnaire are handwritten and others are typed in, but Dr.
Sahagun's signature appears at the bottom of the questionnaire.
Tr. 297. In her opinion, the ALJ noted that some of the responses

12  - FINDINGS AND RECOMMENDATION

were typed while others were handwritten "in writing which is not
the doctor's." Tr. 25. The ALJ rejected a response on the
questionnaire stating that Mr. Jackson could work less than one
hour total during an eight hour day, and could only work
continuously for ten minutes at a time due to extreme hepatitis-
related fatigue, on the ground that "[t]he record does not
support this level of incapacitation" because the typed portion
was reflected in Dr. Sahagun's treatment notes, while the
handwritten portion was not. On the basis of this finding, the
ALJ accepted the typed portion of the questionnaire and rejected
the hand-written portion. Id.

The ALJ has an independent duty to fully develop the record
and to assure that the claimant's interests are considered, even
when the claimant is represented by counsel. Smolen v. Chater, 80
F.3d 1273 (9th Cir. 1996). This duty is triggered "when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence." Mayes v. Massanari, 262 F.3d
963, 968 (9th Cir. 2001),as amended, 276 F.3d 453 (9th Cir. 2002),
citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).
In view of the ALJ's failure to comply with her duty to resolve
the ambiguity in the questionnaire, that ambiguity cannot fairly
be used against Mr. Jackson.

The ALJ does not indicate which parts of "the record" are
consistent with the typed responses on the questionnaire, or

inconsistent with the handwritten responses. I note that the typewritten portion, which the ALJ accepted, says that Mr. Jackson "is extremely tired and fatigued related to hepatitis C," tr. 196, and I note further that Dr. Sahagun's chart notes do contain references to "fatigue" or "chronic fatigue." Tr. 155, 157, 162, 310. I find nothing in the medical evidence which directly contradicts the opinion that Mr. Jackson was unable to work more than one hour a day. As with Dr. Trueblood's finding, a finding by Dr. Sahagan that Mr. Jackson was unable to work more than an hour a day would, if accepted, require a finding of disability. Accordingly, I conclude that with respect to this evidence, the three <u>Smolen</u> factors are satisfied.

### 3. Dr. Telford's Opinions

In August 1999, David Telford, M.D., Mr. Jackson's treating psychiatrist, completed a Medical Source Statement - Mental. Tr. 200-02. In Dr. Telford's opinion, Mr. Jackson was exhibiting "marked difficulty" in maintaining social functioning, cooperating with others, getting along with friends, family and neighbors, establishing interpersonal relationships, communicating clearly and effectively, and interacting and actively participating in group activities. Tr. 201. In Dr. Telford's opinion, Mr. Jackson's condition resulted in deficiencies of concentration, persistence or pace, resulting in frequent failure to complete tasks in a timely manner. <u>Id.</u> Dr.

Telford also opined that Mr. Jackson had deficiencies in his ability to complete tasks in a timely manner, function independently, assume increased mental demands associated with competitive work, persist in tasks, and concentrate, which seriously interfered, either continuously or frequently, with Mr. Jackson's ability to function in an independent, appropriate, and/or effective manner in work, work-like settings, or elsewhere Id. Dr. Telford thought Mr. Jackson's condition resulted in episodes of deterioration or decompensation in work or in work-like settings, and that he, either continuously or intermittently, displayed the following symptoms in stressful circumstances: poor attendance, withdrawal, exacerbation of signs of illness, deterioration from previous levels of functioning, inability to cope with schedules, and superficial or inappropriate interaction with peers. Id. In Dr. Telford's opinion, Mr. Jackson's condition was expected to last at least 12 months at the level of severity he described. Id.

Dr. Telford's opinion was that Mr. Jackson would exhibit continuous or intermittent difficulty in the following areas: understanding and remembering very short and simple instructions; maintaining attention for two hours at a time; sustaining an ordinary routine without special supervision; holding a job; remembering work-like procedures; responding to supervisors; cooperating with co-workers; maintaining regular attendance;

completing a normal workday and workweek without interruptions from psychologically-based symptoms; performing at a consistent pace; asking simple questions or requesting assistance; being able to accept instructions from supervisors; responding appropriately to criticism from supervisors; and getting along with co-workers or peers. Tr. 202. Dr. Telford also opined that Mr. Jackson did not have the ability to make occupational adjustments such as understanding, carrying out, and remembering instructions; responding appropriately to a supervisor and co-workers; and handling customary work pressures.

On February 10, 2000, Dr. Telford stated his opinion that Mr. Jackson was disabled under the following definition:

> 1) cannot engage in any substantial gainful activity (generally cannot work enough to earn more than $700 a month) because of a physical or mental impairment other than drug or alcohol addiction; and 2) the impairment is expected to result in death or last 12 continuous months from the date of onset.

Tr. 280. See also tr. 279 (notation that Mr. Jackson would be unable to work "at least 12 months.")

Because Dr. Telford was a treating physician whose opinions were uncontradicted, the ALJ was required to provide "clear and convincing" reasons supported by substantial evidence in the record for rejecting them. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). "Clear and convincing" reasons are also required to explain the ALJ's rejection of Dr. Telford's ultimate

16  - FINDINGS AND RECOMMENDATION

conclusions about disability. Id.

The ALJ rejected Dr. Telford's opinions because the questionnaire Dr. Telford completed in August 1999 did not provide a space or box for "moderate" restrictions, as is usually the case. Tr. 26. The Commissioner concedes that the ALJ had a duty to develop the record if she thought Dr. Telford might have checked a box marked "moderate," if one had been available, rather than "marked." As with the opinions of Dr. Sahegun, it would be unfair to use the ALJ's failure to comply with her duty to develop the record against Mr. Jackson. In the absence of an attempt by the ALJ to determine whether Dr. Telford would have used the word "moderate" if it had been on the questionnaire, Dr. Telford's statements must be taken at face value--i.e., that the use of the term "marked" meant what it said.[5]

Moreover, even when all of the questions which use the word "marked" in the response are excluded from the evidence, Dr. Telford's remaining opinions strongly support a finding of disability. These opinions are that Mr. Jackson's condition results in deficiencies of concentration, persistence or pace; that he has multiple limitations which seriously interfere, either continuously or frequently, with his ability to function in an independent, appropriate and effective manner in work and

_____

[5] The definition of "marked" on the questionnaire used by Dr. Telford is the same as the definition of "marked" on the questionnaire used by Dr. Trueblood. See footnote 1.

work like settings; that his condition results in episodes of deterioration or decompensation in work or in work-like settings; and that Mr. Jackson does not have the ability to make occupational adjustments, respond appropriately to supervisors and co-workers, or handle customary work pressures.

I conclude that the three Smolen factors are satisfied with respect to this evidence.

**4.   Dr. Fall's Opinion**

On March 22, 1998, Laura Fall, M.D., a treating physician, wrote in a progress note that she was recommending that Mr. Jackson "get [Social Security] disability at least for now until we can adequately treat his hepatitis C." Tr. 125. The ALJ made no reference to this statement in her decision, noting instead that in August 1998, Dr. Fall recorded that Mr. Jackson's liver functions were improved. Tr. 25. Mr. Jackson argues that because his hepatitis C remains chronic, it has not to this date been adequately treated, and, under Dr. Fall's assessment, he remains disabled.

I am not persuaded that this statement satisfies the third part of the Smolen test, because the statement is too equivocal to require the ALJ to find Mr. Jackson disabled.

### Conclusion

The Commissioner concedes that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Doctors

18  - FINDINGS AND RECOMMENDATION

Trueblood, Sahagun, and Telford, as well as the testimony of Mr. Jackson. The opinions of the three doctors on the issue of Mr. Jackson's mental impairments, and on the ultimate issue of disability, if credited, would require finding Mr. Jackson disabled. Although the Commissioner argues that the ALJ should be given another opportunity to determine whether Mr. Jackson's history of substance abuse materially affects his disability, that question has been answered, without contradiction, by Dr. Telford. Moreover, there is no evidence in the record which contradicts Mr. Jackson's frequent statements, to his doctors and to the ALJ, that he has been clean and sober for several years.

Policy considerations also weigh in favor of denying the Commissioner's request for still more administrative proceedings. Mr. Jackson's claim is now more than eight years old, and the Commissioner has had multiple opportunities, in two administrative hearings and an Appeals Council review, to adjudicate his claim. Much of the delay in this case can be attributed to the four-year delay between the first and second administrative hearings, a delay attributable to the Commissioner. As stated above, I also conclude that it would be unfair to penalize Mr. Jackson for the ALJ's failure to comply with her duty to develop the record by further delaying his claim, while giving the Commissioner yet another chance to justify a finding of non-disability. See Benecke, 379 F.3d at

19  - FINDINGS AND RECOMMENDATION

595.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 4, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due October 18, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 19th day of September, 2006.

<u>/s/ Dennis James Hubel</u>
Dennis James Hubel
United States Magistrate Judge